1
2
3
4
5
6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7
8
9

DAVID W. CREVELING,

    Plaintiff,

NO.  CV-06-208-RHW

10

    v.

11
12
13
14
15
16
17

CALVIN TRESER, CONNIE ITEN,
SUSAN BURGDORFF-BEERY,
JOHN DOE 1-200 (to be formally
named as known), JANE DOE 1-200
(to be formally named as known),
WASHINGTON STATE
DEPARTMENT OF ECOLOGY,
WASHINGTON STATE
DEPARTMENT OF FISH AND
WILDLIFE, JAY MANNING,
Director, KOENINGS,
WASHINGTON STATE,

    Defendants.

**ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT;
DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT; DISMISSING CASE**

18
19
20
21

    Before the Court are Plaintiff's Motion to Amend Complaint (Ct. Rec. 10);
Plaintiff's Motion for Summary Judgment (Ct. Rec. 11); and Defendants' Motion
for Summary Judgment.  The motions were heard without oral argument.

22
23
24
25
26
27

    On July 21, 2006, Plaintiff filed his Complaint in the Eastern District of
Washington, alleging conversion and a Fifth Amendment taking claim.  Plaintiff
seeks compensation for the loss of 125 fish in the amount of $1.4 billion and an
additional $4.202 [sic] billion for other property that was converted.  Plaintiff also
alleges that chapters 75, 77, 87, 88, 89, 90, and 91of the Revised Code of
Washington are unconstitutional, based on the U.S. Constitution and the federally

28

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT; DISMISSING CASE ~ 1**

protected rights of the "1866 Mining Act."

On August 18, 2006, Plaintiff moved for summary judgment asserting that the only question the Court needs to consider in his summary judgment motion is who owns the fish that are the subject of his complaint. Defendants also move the Court for summary judgment.

## FACTS

The following facts are taken from Defendants' Statement of Facts that are unopposed by Plaintiff[1] (Ct. Rec. 18).

1.    Plaintiff is the owner of property near Gold Creek that had been, from time to time, irrigated by an irrigation canal flowing from Gold Creek, over through the property of others to Plaintiff's property approximately 2 miles from the point of diversion.

2.    In August, 2003, water was diverted from Gold Creek, into the irrigation canal by a diversion dam placed across Gold Creek.

3.    The diversion dam diverted almost all of the flow of water in Gold Creek into the irrigation canal. The dam was not constructed so that fish could bypass or make their way through the dam. There was no operating headgate on the canal and no screen to prevent fish from entering the canal. Nor was there a functioning water measuring device in place in the canal.

4.    Because the Washington State Department of Fish and Wildlife (WDFW) and the Washington State Department of Ecology (WDOE) claimed the diversion dam and canal violated state law by not allowing fish to pass through or around the dam and not preventing fish from entering the canal, and because the

---

[1]In some of his pleadings, Plaintiff refers to the Defendants as "Thieves and Liars." Plaintiff has not provided any evidence in the record to substantiate his claims that Defendants are thieves and liars, nor has he submitted any evidence to contradict Defendants' Statement of Facts.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DISMISSING CASE ~ 2**

canal contained no water measuring device, on August 22, 2003, WDFW and WDOE personnel closed off the flow from Gold Creek into the canal. Because the flow of water to the canal was closed off, WDOE and WDFW sought to remove the fish in the canal to prevent them from dying when the canal dried up.

5.    Plaintiff appealed the removal of the diversion and closing of the canal, and a final decision was rendered by the Director of the Department of Fish and Wildlife.[2]

6.    On August 22, 2003, 30 fish were recovered from the irrigation ditch with the use of electro shocking.

7.    On August 23, 2003, 11 dead fish were found at the weir in the canal.

8.    On October 1, 2003, 84 fish were recovered from the canal.

9.    The fish recovered or found included juvenile Steelhead, juvenile Cutthroat Trout, juvenile Brook Trout, juvenile Chinook Salmon, and sculpin.

10.    All fish recovered from the ditch were taken above (upstream from) Plaintiff's property.

11.    It is unknown how many fish were in the ditch on Plaintiff's property because that area was not accessed.

### DISCUSSION

Both parties filed motions for summary judgment. Also before the Court is Plaintiff's Motion to Amend the Complaint.

---

[2]The September 1, 2004, Final Order concluded that the Department of Fish & Wildlife was entitled to close the diversion works until such time as it is properly equipped and maintained with an adequate fish guard as prescribed by the Department–specifically a screen and/or bypass to prevent the passage of fish into the diversion works.

(Ct. Rec. 20. Ex. B).

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DISMISSING CASE ~ 3**

1    **I.    Summary Judgment Motions**

2        Both parties agree that the dispositive issue the Court must decide is whether

3    Plaintiff has a property interest in the fish that were taken from the section of the

4    irrigation canal that was above Plaintiff's property.

5        **A.    Standard of Review**

6        Summary judgment is appropriate if the "pleadings, depositions, answers to

7    interrogatories, and admissions on file, together with the affidavits, if any, show

8    that there is no genuine issue as to any material fact and that the moving party is

9    entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no

10   genuine issue for trial unless there is sufficient evidence favoring the nonmoving

11   party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby,*

12   *Inc.,* 477 U.S. 242, 250 (1986). If the nonmoving party "fails to make a showing

13   sufficient to establish the existence of an element essential to that party's case, and

14   on which the party will bear the burden of proof at trial," then the trial court should

15   grant the motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). When

16   considering a motion for summary judgment, a court may neither weigh the

17   evidence nor assess credibility; instead, "the evidence of the non-movant is to be

18   believed, and all justifiable inferences are to be drawn in his favor." *Anderson,*

19   477 U.S. at 255.

20       **B.    Ownership of the Fish**

21        When the government physically takes possession of an interest in property

22   for some public purpose, it has a duty to compensate the former *owner.* U.S.

23   Const. Amend. 5;[3] *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Regional Planning*

24

25        [3]Often referred to as the "Just Compensation Clause," the final Clause of the

26   Fifth Amendment provides: ". . .nor shall private property be taken for public use

27   without just compensation." It applies to the States as well as the Federal

28   **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY**
     **JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY**
     **JUDGMENT; DISMISSING CASE ~ 4**

*Agency, et al.*, 535 U.S. 302, 322 (2000) (Emphasis added).  Similarly, "conversion is the act of willfully interfering with any chattel, without lawful justification, whereby any person entitled thereto is deprived of the possession of it."  *Westview Invs. Ltd. v. U.S. Bank Nat. Ass'n*, 138 P. 3d 638, 646 (Wash. App. 2006).  Thus, the parties are correct in holding that ownership of the fish is dispositive to determining Plaintiff's claims.

Plaintiff relies on Genesis 9:1-3[4]; English law[5], and the Washington Supreme Court decision in *Griffith v. Holman*, 23 Wash. 347 (1900), in support of his contention that he was the owner of the fish removed by the DFW.  Defendants argue that the fish were the property of the state and the agencies and their employees were acting within the agencies' power to regulate and protect natural resources like fish and water.

Under Washington law, "[w]ildlife, fish, and shellfish are property of the state.  The commission, director, and the department shall preserve, protect, perpetuate, and manage the wildlife and food fish, game fish, and shellfish in state waters and offshore waters."  Wash. Rev. Code § 77.04.012.  State waters include

_____

Government.  *Tahoe-Sierra Pres. Council*, 535 U.S. at 306 n.1.

[4] [1] Then God blessed Noah and his sons, saying to them, "Be fruitful and increase in number and fill the earth. [2] The fear and dread of you will fall upon all the beasts of the earth and all the birds of the air, upon every creature that moves along the ground, and upon all the fish of the sea; they are given into your hands. [3] Everything that lives and moves will be food for you.  Just as I gave you the green plants, I now give you everything.

Genesis 9: 1-3 (New International Version).

[5]*Bristow v.Cormican*, L.R. 3 App. Cas. 641 (1877-78).

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DISMISSING CASE ~ 5**

all fresh waters[6] within the territorial boundaries of the state.  Wash. Rev. Code §

77.08.010(35).  Moreover, free-swimming fish within the waters of Washington

are *ferae naturea*, owned by the states.  *Washington Kelpers Ass'n v. State*, 81

Wash. 2d 410, 415-16 (1972) (holding that state, in its sovereign capacity, owns

the fish in the waters of the state; fishermen have no private property rights in

taking salmon); *see also McCready v. Virginia*, 94 U.S. 391, 394 (1876)

(recognizing that the state owns wild animals prior to capture and this concept of

ownership is recognized for purposes of the exercise of sovereign powers to

regulate and conserve the state's fish and wildlife resources).

Plaintiff cites to *Griffith v. Holman* for support of his contention that he

owns the fish that were located in the irrigation canal.  *Griffith* held that the owner

of land across which an unmeandered stream flows has the exclusive right to fish

in the water opposite their land.  23 Wash. at 357*; see also Snively v. Jaber*, 48

Wash. 2d 815, 820 (1956).  *Griffith* recognized, however, that the ownership of the

fish is subject to the rights of the public, and must be exercised with due

consideration for the nature of the property, and *exercised only when the fish are

upon the land of the owner*.  *Id.*  (Emphasis added).

*Griffith* also qualified the right of the land owner by "the universal principle

that all property is held subject to those general regulations which are necessary to

the common good and general welfare, and to that extent it was subject to

legislative control; it is a well-established principle that every person shall so use

and enjoy his own property, however, absolute and unqualified his title, that his

use of it shall not be injurious to the equal enjoyment of others having an equal

right to the enjoyment of their property, nor injurious to the rights of the public."

---

[6]"Freshwater" means all waters not defined as saltwater including, but not
limited to, rivers upstream of the river mouth, lakes, ponds, and reservoirs.  Wash.
Rev. Code § 77.08.010(34).

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT; DISMISSING CASE ~ 6**

1  *Id.*

2      Here, it is undisputed that the fish that Plaintiff asserts were converted or

3  taken by Defendants were not located in the portion of the ditch that ran through

4  his land.  While *Griffith* stands for the proposition that Plaintiff may have

5  exclusive right to fish the waters that run through his property, it does not follow

6  that Plaintiff is the exclusive owner of fish that are destined to run through his

7  property.  Moreover, *Griffith* supports the conclusion that Plaintiff does not have

8  any exclusive right to fish in the irrigation canal that are located above his

9  property, and it follows that he would not have any ownership rights to the fish so

10  situated.  Plaintiff's arguments fail to grasp the distinction between the right to fish

11  a particular area with ownership of free-swimming fish.  It is a distinction that is

12  dispositive to this case.

13      Because Plaintiff had no property interest in the fish that he is alleging were

14  converted or taken by the Defendants, his claims of conversion and of an

15  unconstitutional taking fail as a matter of law.

16      Additionally, it is undisputed that agency employees removed the fish from

17  the irrigation canal in an attempt to protect the fish from imminent peril, once the

18  diversion had been removed.  This is an appropriate exercise of the state's police

19  power.

20  **C.    1866 Mining Act**[7]

21

22  _____

23  [7]In 1866, Congress for the first time expressly opened the mineral lands of

24  the public domain to exploration and occupation by miners, Mining Act of 1866,

25  ch. 262, 14 Stat. 251.  *California v. United States*, 438 U.S. 645, 656 (1978).

26  Because of the fear that this Act might in some way interfere with the water rights

27  and systems that had grown up under state and local law, Congress explicitly

28  recognized and acknowledged the local law, as set forth in Section 9 of the 1866

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT; DISMISSING CASE ~ 7**

Plaintiff refers to section 9 of the 1866 Mining Act[8] as providing the rights claimed by him, and which, according to Plaintiff, supersedes state law. As Defendants point out, section 9 of the 1866 Mining Act may assist Plaintiff in a controversy over water rights or the right to construct the ditch or divert water for agricultural use, but it does not provide for ownership of fish, nor does it affect the state's authority to protect its resources.

In support of his arguments based on the 1866 Mining Act, Plaintiff submitted a number of affidavits in which it appears he is attempting to establish that the local custom of the area was that persons could fish in the ditches in the Methow area. These affidavits may be relevant if Defendants were challenging Plaintiff's right to fish in his irrigation ditch, but they are not. Again, Plaintiff

---

Mining Act. *Id.* The Mining Act of 1866 was not itself a grant of water rights pursuant to federal law. *Id.* Instead, the Act was "a voluntary recognition of a pre-existing right of possession, constituting a valid claim to its continued use." *Id.* (Citations omitted).

[8]Sec. 9. *And be it further enacted*, That whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canals for the purposes aforesaid is hereby acknowledged and confirmed: *Provided, however,* That whenever, after the passage of this act, any person or persons shall, in the construction of any ditch or canal, injure or damage the possession of any settler on the public domain, the party committing such injury or damage shall be liable to the party injured for such injury or damage.

14 Stat. 251-253.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DISMISSING CASE ~ 8**

1  confuses the right to fish with ownership of the fish.  The right to fish does not

2  equate to ownership of the free-swimming fish.

3  **D.    Native American Rights**

4  Plaintiff asserts that he has Native American blood from the Methow and

5  "has inherited rights by birth to the rights that are due those who are native." (Ct.

6  Rec. 34).  There is nothing in the record that establishes Plaintiff's status as a

7  member of an Indian tribe.  Moreover, Plaintiff has not provided the Court with

8  any authority that his right to fish trumps the state's right to protect, preserve, and

9  regulate the taking of fish.  *See State v. McCoy*, 63 Wash. 2d 421, 424 (1963)

10 (recognizing that the state can regulate the time and manner of off-reservation

11 fishing).

12 **E.    Standing**

13 Plaintiff also asserts that certain chapters of the Revised Code of

14 Washington are unconstitutional as applied to him.  Because the Court has found

15 Plaintiff does not own the fish, it is necessary to determine whether he has standing

16 to bring the remaining constitutional claims.  Even if the parties do not address the

17 issue of federal jurisdiction, a district court must be cognizant of whether it has the

18 jurisdiction to hear the claim before it.  *Pacific Towboat & Salvage Co. v.*

19 *Interstate Commerce Comm'n*, 620 F.2d 727, 729 (9th Cir. 1980).

20 Here, in order to have standing to assert that statutes as applied to him are

21 unconstitutional, Plaintiff must show three elements.  First, Plaintiff must have

22 suffered an "injury in fact"—an invasion of a legally protected interest which is (a)

23 concrete and particularized, and (b) "actual or imminent, not 'conjectural' or

24 'hypothetical.' " *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)

25 (citations omitted).  Second, there must be a causal connection between the injury

26 and the conduct complained of—the injury has to be "fairly . . . trace[able] to the

27 challenged action of the defendant, and not . . . th[e] result [of] the independent

28

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DISMISSING CASE ~ 9**

1  action of some third party not before the court." *Id.*  Third, it must be "likely," as

2  opposed to merely "speculative," that the injury will be "redressed by a favorable

3  decision." *Id.*

4       Here, Plaintiff cannot show "injury in fact."  Because he does not have an

5  exclusive ownership interest in the fish that are located in the irrigation canal

6  situated above his property, he does not have standing to bring the remaining

7  constitutional claims.

8       **F.    Conclusion**

9       As Defendants' correctly point out, Plaintiff has a right to fish on his

10  property, subject to applicable state rules and regulations.  His right to take fish

11  does not equate with ownership of fish that may swim freely through the waters on

12  his property.  Moreover, his right to fish cannot interfere with the state's mandate

13  and duty to protect, preserve, and regulate the taking of fish.  Plaintiff's remaining

14  arguments are without merit, and summary judgment in favor of Defendants is

15  appropriate.

16  **II.    Motion to Amend Complaint**

17       Plaintiff asks that he be allowed to amend his Complaint by attaching to the

18  Complaint letters written by a Mrs. Guy Vintin of Carlton, Washington.

19       Pursuant to Fed. R. Civ. P. 15, the Court should freely grant leave to amend

20  pleadings when justice so requires.  An appropriate consideration is whether

21  Defendants will be prejudiced by the amended Complaint.  Here, the letters

22  Plaintiff seeks to add to the Complaint do not state a claim.  It is not clear how

23  Defendants would respond to the proposed amended Complaint. Also, the

24  proposed amended Complaint was filed just before Plaintiff filed his motion for

25  summary judgment.  The timing of the amended Complaint is prejudicial to

26  Defendants, as well.  They would be required to respond to the summary judgment

27  motion as well as file an amended answer in response to the amended Complaint.

28

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DISMISSING CASE ~ 10**

Because the Court has concluded that summary judgment should be granted in favor of Defendants and the proposed amended Complaint does not set forth any new claims, in the interest of justice, the Court declines to grant leave for Plaintiff to amend his Complaint.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Defendants' Motion for Summary Judgment (Ct. Rec. 16) is **GRANTED**.

2.    Plaintiff's Motion for Summary Judgment (Ct. Rec. 11) is **DENIED**.

3.    Plaintiff's Motion to Amend the Complaint (Ct. Rec. 10) is **DENIED**.

4.    The telephonic scheduling conference set for November 2, 2006, is **stricken.**

5.    The above-captioned case is **dismissed with prejudice**.  The District Court Executive is directed to enter judgment in favor of Defendants.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order, forward copies to Plaintiff and counsel, and close the file.

**DATED** this 22nd day of September, 2006.

*s/ Robert H. Whaley*

ROBERT H. WHALEY
Chief United States District Judge

Q:\CIVIL\2006\Creveling\sj.wpd

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DISMISSING CASE ~ 11**